Good morning ladies and gentlemen. The first case for hearing this morning is Illinois Bible College v. Lindsay K. Anderson. Mr. Mock. Good morning your honors, may it please the court. We feel the outcome of this case is governed by two Supreme Court decisions and two different legal tests. The Hosanna-Tabor free exercise case from the Supreme Court instructs us that religious autonomy cannot be violated by governmental regulation. The as followed by this circuit in Norton v. Springfield, finds that content-based regulations are presumptively unconstitutional and cannot be enforced unless the state shows a compelling interest. And we believe that on the face of the statute, there is no compelling interest because the state has chosen to give exemptions to various schools, religious schools and secular schools from having to be accredited to give degrees or having to get accreditation to operate. So there can be no compelling interest when the state has large loopholes. In addition, there are 28 states in the U.S. that do not regulate religious education on the secondary level. Our source for that... Secondary or post-secondary? Post-secondary, thank you. The state of Connecticut did a study in 2007 that's referenced in our reply brief and I'm quoting from the executive summary of that report. Currently 28 states exempt religious schools or Bible colleges from their higher education licensing, certification or accreditation process. Now I don't know if that's changed much from 2007, but that's a fair broad statement that many states don't feel there's any regulation necessary. Do the other states that do have rules, are they similar to Illinois? I've looked at the report and I guess I could say there's a continuum across the board. Some are very restrictive Illinois. I would characterize as towards the more restrictive end and some that don't regulate do have modest regulations. It's just it's a broad spectrum, but most don't regulate and that's another problem that our clients have. Many of our prospective students are going out of state so they can get degrees because... You're not making a Commerce Clause argument, are you? Excuse me? You're not making a Commerce Clause argument, are you? No. Okay, that comes next. Yeah, I wanted to focus on the free exercise and the free speech issues because I think those are clearest and then if the court wants to discuss the Establishment Clause problems, that makes an interesting discussion, too. On the free exercise point, Hosanna Tabor, the Supreme Court ruled that a Lutheran school was entitled to choose its own ministers and to fire a primary school teacher who was a commissioned licensed Lutheran minister and she did not have a claim under employment law against the schools. You mentioned about degrees sometimes having to go out of state. Are the teachers at these very schools, you know, professors or whatever you call them, that are teaching in the college, do they have degrees from other places? Yes, they have and it's all over the board. Some of them have graduate degrees and some of them undergraduate degrees. I don't know all of the particulars that each school has. Well, the requirement is here that they have to have a graduate degree, is that correct? The state law? Yeah, if they're going to teach undergraduate, you have to have a degree in the one level above. That'd be more than a page ahead of the students. That's what they're saying. Our issue is that the state shouldn't be able to and really has no jurisdiction to come in and say whether you're a level above or not. For example, if one of our colleges wanted to have Billy Graham come and teach evangelism and he hadn't graduated from high school, they could say he's qualified because he knows his stuff, that what we want to teach in terms of our faith, and the state shouldn't come in and say, well, he needs to have a graduate degree in evangelism or biblical studies or anything else. It's just not within the competence of the state to say how adequate a professor is in terms of teaching reformed theology. Mr. Mark, part of your argument is very powerful. I'll certainly agree with you that no state can tell a faith community who can teach or preach its faith. I understand that to be your strongest point, and obviously there has to be a way for that faith community to decide and to communicate who's entitled to exercise that should be too surprised if that process involves education, right? No, these universities are part and colleges are part of the churches. Right, so the problem that I have with your argument is it seems to me like you're swinging for the fences on this because you're saying that from that core religious right to decide who can preach and teach for us and to communicate that and to evaluate the knowledge and orthodoxy of those who preach and teach that way. The state can't examine any aspect of the education including, I think we have in this record, for example, the teaching of office skills or the I understand your argument to be, in essence, because everything we want to teach is infused by our faith, there is no line that can be drawn there. Is that the argument? Yes. So that you are totally exempt from any review of math, English, biology, office skills, etc. If it's tied in to the religious mission... But that's easy to do, right? Well, the Supreme Court addresses this in the Hosanna-Tabor case because the argument was raised, the one that you're having here in Hosanna-Tabor. And they say you can't have an exclusively religious education. It's well-nigh impossible, I'm paraphrasing the court, because you need to teach writing skills, you need to teach finance to ministers. Sure. But Hosanna-Tabor, when you were starting your presentation this morning, you said it shows that the First Amendment, if I can paraphrase you, protects religious autonomy against state regulation. Yes. That's an awfully broad reading, obviously, of Hosanna-Tabor, because it doesn't apply to all employees, for example, does it? No, it does not apply to all employees. Okay, it doesn't apply to employees who are not ministers, even read broadly, right? And so don't we have a parallel problem here with education? No, Justice Alito and Kagan's concurring opinion goes to that issue, do you have to be commissioned? And their explanation is really it's a functional test. Right, but it doesn't mean that there's no test, right? No. And that's the problem that I'm having with your attempt to claim complete exemption from these laws. Well, the Hosanna-Tabor case was an elementary school teacher who was commissioned. Our case is professors and instructors who are teaching the Bible in seminaries and Bible colleges, which is much more within the centrality of the faith issues, because that's what the state regulates. Are the instructors adequately prepared and adequately qualified? And these are instructors for Bible college students and Bible college seminaries. So even though they may not be fully degreed or commissioned like the Lutherans do, they are within the heart of the free exercise protection, we believe. How about the subject that we're mostly familiar with, like law? Would the state have any ability to regulate legal education? Well, certainly the licensed lawyers and... Not licensing, obviously a state and its courts can do that. But if, let's say a madras wants to offer instruction in Sharia law, and after several years of instruction, grants a degree called a Juris Doctor. Is that beyond the reach of state regulation? I think prospectively, yes. If it turns out to be a fraudulent representation, the Attorney General or the students all have rights under consumer protection law to redress if it's an inadequate education. After they've spent money and years and so on. Why can't the state prevent that by asking for licensing ahead of time if a school is going to call itself a school that grants a Juris Doctor in Sharia law? Well, because I think the state, first of all, doesn't have the jurisdiction under the Constitution, and then it doesn't have the competence to say what's good Sharia law teaching. Because I'm sure there are many different ways of interpreting Sharia law, and each Muslim sect would have a different take on it. For the state to come in and say, we approve of this Muslim sect, but this other one is inadequate, violates the religious autonomy. I'm looking at your appendix. It says that the schools operate primarily as ministries of churches or denominations and offer two to four year programs to prepare high school graduates for a variety of faith-based careers as teachers, coaches, nonprofit workers, ministers, and more. So they're supposedly training them for a career or a job. But when they come away from it, other than calling it a degree, what can you call the person that comes away with whatever they achieve when they're at these colleges? Well, what can you call them? I mean, they're a graduate of certain things, and they were qualified. You could say I majored in Old Testament studies and got a bachelor's degree from Day Spring Bible College in Old Testament studies. A master's degree? Master's degree or graduate degree. And then the employer can evaluate what kind of school is this and how well prepared is this student? Do I want to hire them for my seminary? Or if the person chooses to go into a secular education, then they have to say, I have a Bible school preparation. And the employer says, that's fine. Or the employer says, no, I would rather you have a technical education from an engineering school. Let me throw out this and maybe there's a simple answer to it. Why the term college? Yeah, I thought that might come up and I should have looked it up, but I'll bet you Trump College was accredited, and this was a post-accreditation lawsuit concerning whether they were delivering what they promised. But I don't know whether they were accredited or not, or whether accreditation would have helped in that case. Well, for-profit schools have been challenged. Corinthian, the big one that just closed, they're challenging them because they're for-profit and they allege some sort of fraud when they get done with whatever education they get there. I'm not backing that reason for closing those schools up, but that seems to be an attack. And the question, I guess, that you might answer with is saying, well, there are a whole lot of colleges where people get degrees that are basically worthless. I knew a teller at a bank, once I said, what was your major? She said interior decorating. Now, there are places where interior decorators are hired, but it's pretty rare and she couldn't get a job. And I think you could probably list a whole lot of regular colleges that get degrees that are not really worth anything. And it looks to me like what they're focused on here is that whatever you come away from from your colleges, other than those jobs that I just mentioned here in your appendix, they're not degrees and not worth anything. And to label them a degree is sort of fraudulent. Well, I don't think the people that hire them within the fundamentalist Baptist circle where most of the graduates go to apply would agree with that statement. Well, I'm sure they wouldn't. I'm just looking at it from the standpoint with the secular point of view, whatever you're supposed to come away with, there are a lot of people from the secular don't come away with very good degrees. But this is the problem here. It's better calling it a degree. Is there a better label for it or something that would be accommodating, do you think? Well, the current law broadly defines degree. It says any diploma, certificate or other evidence of having successfully completed a post-secondary education. And so you can't say anything. And we think that under free speech, if you believe you have a degree, then that's going to reflect to your student body, to your faculty, what you're saying. And your student body, faculty, donors, board of trustees are all going to question the quality. And there's plenty of control there without the state coming in and saying, we don't judge that the graduate degree from this school is adequate because it's in study of ancient religious texts. And yet the reason you're here is because the label degree has economic and reputational benefits, correct? Absolutely. That you want to be entitled to. Your clients and their students want to be entitled to. Schools always were until these regulations came, traditionally. But as I understand it, you basically seem to want the benefits of those kinds of labels and the reputation and the quality control that's supposed to go with it without any of the costs of compliance. Well, we don't want accreditation, though, Your Honor. We don't want the benefit of state accreditation. OK, so as far as you're concerned, then, could the state distinguish and require you to distinguish between regulated and unregulated degrees, diplomas, or certificates? Could they require you, for example, to put an asterisk on the degrees that say not state approved, not state accredited, and you could proudly say that? Some type of communication. I'm not sure what it might be that the school may adopt or the state may adopt. It may be a constitutionally truthful statement. So it would be permissible to distinguish between the two categories? Yeah, you could say we're not accredited by the state. We're accredited by Transworld Commission, which is another private Christian accrediting organization that the parents and students look at. I'd like to reserve time, if I may. Thank you, counsel. OK. Mr. Huska, I understand you're going to argue from the table. I am. Thank you. May it please the court, I'm Assistant Attorney General Richard Huzzack, counsel for Lindsay Anderson, the chair of the State Board of Higher Education of Illinois. Counsel, could you speak up a little bit? Those really don't amplify. I'll do my best, Your Honor. I do want to make sure that you can hear me. And I urge the courts to affirm the district court's judgment against the plaintiffs in this case, where the core issue relates to whether the plaintiffs are entitled, as a constitutional matter, to issue college degrees without complying with the state licensing laws and requirements of those laws that govern whether an institution of post-secondary education is authorized to do so. And ultimately, I think the synthesis of the problem is reflected by Exhibit 6 to the plaintiff's complaint, where they say that Illinois laws are relegating them to a second-class status. The reality is just the opposite. They don't want the same treatment as every other college is entitled to. They want a preferred treatment. They want a better treatment. They want an exception to a nondiscriminatory law, and they want that exception because they have a religious objection to complying with that law. And the state has absolutely no interest or no desire or public policy purpose in preventing them from teaching what they want with whatever faculty they want. Where the state's interest comes into play, however, is when they also demand the right to issue college degrees, which have a longstanding, well-established meaning in the law and in society, and carry with them an economic value. And the plaintiff's complaint here is clear that the reason they want to issue degrees is not because it's a fundamental aspect of their religion to issue college degrees, but rather the economic advantages that flow to their students who want to make themselves more marketable to their employers, and hence the economic advantages that flow to the schools themselves if they're able to offer college degrees, again, without complying with any of the standards that have maintained, created, and preserved the value of that concept for over a century in this country, and even longer in many places. Is it possible to modify, in name only, I guess, these degrees as something like a apostolic degree or biblical degree or something that's focused on what they do teach and learn, but it separates it from what I earlier referred to as somebody who does an interior decorating degree? The complaint doesn't ask for that relief, and so I'm not sure how much the court should get into the business of giving advisory opinions about where the line should be drawn. I can say that under the current law, anything that connotes a bachelor's degree, a master's degree, or a doctorate degree in traditional words or the abbreviations that are familiarly associated with those concepts is not something they can do. But the state's concern in doing that is so that there's not some serious misrepresentation or possibly fraud by attaching a word degree to something that isn't worth that attachment, and I guess that's what the state law is. I don't know the 28 states that do and don't have certain laws. It's both to prevent outright fraudulent degrees by diploma mills, but also to prevent substandard degrees, because if you don't set a minimum bar of competency and adequacy to the curriculum and the faculty, then substandard degrees erode the value that a degree has to graduates of licensed schools as well as it erodes the value of the education provided by those schools themselves. There are exceptions. I guess you call them licensed schools. They're approved by the Board of Education under a licensing program. You learn certain skills or some targeted area of expertise. Yes, in many areas, and I think the plaintiff's position is that if they add a component of religious perspective to their education, which they have an absolute right to do, then that component gives them a complete exemption from the otherwise applicable laws that govern degree-granting institutions in the state. It cannot be that just adding a religious perspective to a class in office accounting or building construction takes it entirely out of the domain of the state's ability to ensure that the program itself is designed to deliver what is represented. I want to emphasize that the laws in this case rely entirely on secular criteria. The state is not enforcing some doctrinal orthodoxy with respect to the standards it applies. If the regulators at the board are examining a school that offers classes in Einstein's theory of general relativity or quantum mechanics, the evaluators don't decide whether the principles that are taught are acceptable or they're valid. They simply make what I would call a water's edge determination to see whether the faculty has the competence to teach that course and whether the materials correspond to general relativity and quantum mechanics as opposed to interior design, for example. That's a minimal intrusion into the type of control that the plaintiffs want to have over the design of their programs, and it's an intrusion that's justified only by the fact that these schools want to issue college degrees. Without that, they're free to teach whatever they want with whomever they want. So what can they say? Let me go back to the question that I asked Mr. Mauck earlier. Clearly, a faith community is entitled to identify who can preach and teach for it, right? Absolutely. And to communicate that choice, right? Absolutely. They can base that choice on educational achievements, right? Or whatever criteria they want to apply to the extent that they're not telling the world that our students are graduates with college degrees. Okay, but here's the problem, though. The statutes define degree so broadly that it looks like gold star in New Testament studies would be a violation of the law, right? I suppose theoretically. I want to emphasize, though, that the plaintiffs have insisted that this is an as-applied challenge to the state laws. And so they make these arguments that veer off into claims about vagueness and facial overbreadth that are not really a part of this case. They have said they want to issue bachelor's, master's, and doctor's degrees, and they want an exemption to do that. So we could discuss hypothetically whether they should be able to say, our students have taken all of these courses in these subject matters, and then how far beyond that they might go in terms of saying successful completion of an undergraduate program. But the whole point of this definition, which dates from 1915, a Massachusetts Supreme Court case that's cited in our briefs here, the Commonwealth versus, I forget the full title, but they carefully quote a definition that's almost verbatim what the Illinois statute says, because as areas of education evolve, the legislature didn't want to be locked into a lexicon of abbreviations or specific names, creating an invitation for unsavory institutions to try and get around it. I mean, look, I get that, and that's the problem here. But from the other party's perspective, the question is, what can we say to recognize achievement? They can say that the students have completed the classes that they have completed. What do they call that? It's impermissible under the Illinois law for them to call it a diploma for successful completion or something along those lines, because that's akin to a degree. If the court thinks that based upon... You couldn't say diploma for successful completion. I mean, label after whatever they came out of there with. They graduated with a diploma for successful completion of whatever you want to put in it. You said they can't say that. The law, strictly interpreted, would say that they cannot use alternative words to convey the same meaning, which is that... But a degree has a common-sense meaning. If they want to just use alternative words to convey the same thing, they're, again, trying to get around the law in a manner that... That's what they're trying to do. Look, yes, they're trying to... They are trying to get around the law. Frankly, I have trouble with the breadth of what the plaintiffs are trying to do. But there is a core of what they're arguing that is clearly correct, which is that they are entitled, a faith community is entitled, to make those kinds of decisions and communicate those kinds of decisions in that credentialing process. I think the Catholic Church has what's called the missio canonica, and I apologize for my Latin pronunciation, but the license to teach as a Catholic, and no state has any business interfering with that. Well, if the law does recognize, as the exhibits to the complaint make clear, that if there is a program strictly limited to seminary or theological studies, that they can call that a diploma. That's the private... Wait a minute, I've got the acronyms, PV... Private Business and Vocational Schools Act. But that exception does not apply under the other two statutes, does it? To be honest, I'd have to draw lines and look back at the language to figure out where it exists. It does not. I believe it does not. Generally, if you're saying that you have a program that goes beyond seminary and theological studies, and you want to tell people that your students have successfully completed that program, then it is tantamount to saying these people have a degree in that because they've successfully completed this program of academic studies under the traditional definition of what a degree is, and using other words to describe it still runs afoul of the state's interest in ensuring that if you're going to make that representation, there's an adequacy to the education, and it's not misleading to the public or undercutting the public interest that the government has in ensuring that those certificates, diplomas, convey what the public has traditionally understood that they do convey. Well, obviously, there are a lot of religious schools that qualify under the state for their degrees. Is that correct? Yes. I don't know the names. Wheaton College, for example? I'm sure they do. My kids went to, I'll call them orthodox Catholic schools. One got a graduate business from Purdue. Another's getting a graduate teaching degree from Notre Dame. You can go on from those schools, but they do get degrees. They certainly are. But they're very targeted for their religious teaching surrounding all the courses. Now, that's okay, apparently. Those schools apparently do not have a religious objection to any government oversight of their educational materials and faculty. The unique aspect of this case is that these schools not only want to issue degrees, but they want to do so without complying with the regulatory standards that apply to other schools that issue degrees. And I want to emphasize here that the source of the conflict in this case is not some discriminatory aspect of the law that they're challenging. It's their religious objection to complying with a nondiscriminatory law. And there, under traditional equal protection analysis, if these laws do not target religion by means of an intentional discrimination against religion or religiously motivated conduct, then they're not subject to strict scrutiny. You don't have to show a compelling interest. And that's the Smith v. Employment Division case where the Supreme Court has reaffirmed time and time again. Now, I don't want to belabor the two recognized exceptions in Smith that the court has referred to, hybrid claims and individualized analysis of exceptions to a general program. I think our briefs adequately discuss that, and I think neither of those even could be fairly argued to apply. But Hosanna-Tabor is a separate exemption from the general rule relating to neutral laws of general applicability. And I know the court in its earlier questions has focused on that, and I'd like to emphasize that Hosanna-Tabor is a far cry from what the plaintiffs are demanding here. In Hosanna-Tabor, you're talking about aspects of the core internal autonomy of a church's or religious school's governance. And when a law which Title VII, anti-retaliation provisions of the Americans with Disabilities Act, employment discrimination laws are applied, the court emphasized that they force one of these institutions, religious institutions, to hire or keep somebody that they do not want to keep. And that intrudes upon their inherent free exercise ability to make those decisions free from government interference. But that's not the same as a situation like we have here where these laws aren't saying, you must hire this person based upon their religious views or you must hire and keep that person. But the state could say, no, you cannot let this person teach, right? And if there were a case like that and there were an individual showing of impermissible discrimination or violation of free exercise rights in that individual case, then fine, there would be a free exercise challenge there. But they can't be exempt from the general regulatory baseline credential requirements. Mr. Hasek, let me ask you, do you think that in Hosanna-Tabor there is a line between, in essence, ministerial employees and secular employees? I believe the case itself says there is. So it's difficult to draw, right? As is the line drawing on the spectrum between pure internal autonomy and governance and outward acts. But here I think we're not even close to that boundary because the critical thing that they want to do here is not just choose who teaches what, but to insist that they get to issue college degrees no matter who they choose to teach. And so it's sort of like a religious community that grows fruits and vegetables and wants to sell their produce and insists upon using the word organic in their sales because it generates more revenue and people pay more for the same produce if it's labeled as organic. And they say, but we also have a religious objection to any government inspection or oversight of our program. You don't get to look to see whether we satisfy the criteria for the organic label that everybody else has to follow. And at some point the government can say, you can grow your fruits and vegetables and we probably can't prevent you from eating them yourselves. But when you go into the world and sell them in the marketplace, you don't get to use the term organic and at the same time stiff arm the public investigators to ensure that you're complying with the criteria that apply to everyone else. Justice Holmes made a comment about the common law developing by different points along the spectrum and it's not obvious in advance exactly where the line should be drawn between them. And I think Hosanna Tabor is inviting further development of the law in that area, but even this board I believe has indicated that it does not stretch so far as to be able to leverage a religious objection to general laws of application outside the core internal autonomy of a church or a religious school to be able to do the things like they are doing here. Could we talk about the... An external force soon to come and that's student loans. They're a huge debt, student debt, coming away from colleges, whatever, with degrees and they find out that 50 or $100,000 that they borrowed and got what they borrowed for, which was a degree, is not a viable opportunity for a job. I foresee that coming because of the huge outstanding student debt, claims of forgiveness. That's going to cause maybe schools, legitimate schools to say, well, you can teach this, but you're not going to be able to take a student loan with government guaranteed or whatever it is for that course. But the free exercise clause doesn't guarantee some type of government economic support for the operations of a religious institution. I'm just comparing it to an external force where there's something, whatever Justice Holmes said about an evolving society, it now is this huge tsunami that's coming and that's the student loan debt preventing a lot of people from buying a house, doing a lot of other things because of the job that they can't get based on their degree. I know that's outside what we're talking about here, but nevertheless, it is what the legislatures and whatever are going to be scrutinizing. They certainly are going to have to deal with that difficult issue and I would hope that they do so in a manner that does not incorporate any element of discrimination against people who went to religious institutions. There should be neutrality in these laws. Along those lines, Counsel, I'd like to ask you about the grandfather clauses here in these statutes. I think we're all aware that legislatures can often write new laws with so-called grandfather clauses to protect reliance interests and the like, but these are pretty extraordinary. If I understand these laws under the Academic Degree Act and the Private Colleges Act correctly, all that matters is the date of the establishment of the institution and its corporate continuity since that establishment. Yes, but there's a very sound reason for that break point. The first act was passed in the wake of the Second World War and the GI Bill, at which point there was a vast proliferation of diploma mills and not only Illinois but states throughout the country, if they didn't already have laws in place, they put laws in place. Now, I want to emphasize that there was not some inherent right of any corporation to create a college that could issue degrees. The earliest institutions in Illinois of higher education had specific legislative franchises or charters similar to the one that was granted during colonial times to Dartmouth University. Likewise, there was not an omnibus Articles of Incorporation permission for any company to set up a degree-granting college. Those had to be specifically issued and granted by the Secretary of State under the law in place at that time. So there's more than just sort of a reliance interest in those institutions. There is, in fact, the type of vested contractual right in those institutions that fully justifies the type of grandfathering provision that was enacted under those laws. And there has been no suggestion in the complaint in this case that those laws have actually permitted incompetent, inadequate, or fraudulent schools to continue to perpetrate their deficient education on the public. And it's important to emphasize that that line is itself neutral vis-à-vis religion. There are pre-grandfather clause cutoff schools that are religious institutions, the theological seminaries in Illinois, as well as secular institutions that predate. And after that, the regulatory scheme that the law imposes applies both to religious and to non-religious private colleges. So I really don't think that there's anything about the grandfather clauses that dramatically changes the analysis in this case. It certainly doesn't rise to the level of an equal protection challenge. And I would submit that even if the court imposed strict scrutiny to this set of regulatory laws, those laws survived strict scrutiny under precedent in case law in many jurisdictions over many years and the existence of a grandfather clause similar to the one that we have here has never been found sufficient to defeat a narrow tailoring requirement. Again, the law doesn't require a perfect fit. So I obviously don't know the complete range of Illinois statutes and regulations that might apply here. But let's suppose one of these older universities or colleges was taken over by a new generation of board members. A new generation of leadership and decides to start issuing Ph.D.s in creation biology. Would there be any state restriction on that or ability to intervene? Unless that program itself is misrepresented, I'm not aware that the current state of the law permits that. But the hypothetical possibility of such a discrepancy in the future isn't enough today to strike down these laws under an as-applied challenge that they have here. I think the plaintiffs frequently veer off into what-if type scenarios to suggest that there could be a problem at the outer boundaries of these laws under various hypothetical circumstances. But that's not the case we have here. We have a case where the essential ingredient of the plaintiff's claim on which they rest all of their constitutional challenges under the religion clauses is that they have a religious objection to being subject to government oversight. And again, I think the Smith case and the cases even before it under a strict scrutiny analysis have said that merely being an objector to some generally applicable neutral law doesn't give you the privilege of being exempt from that law. Otherwise, every church would be a law unto itself. And there are religious schools that comply with these standards. And the government is not imposing and enforcing some type of doctrinal orthodoxy with respect to what they teach. It's merely assuring that the programs are adequate to teach what they profess to teach. Unless the court has further questions, I see my time has expired. I appreciate your consideration of this and urge the court to affirm the district court's judgment. Thank you, Counsel. Your Honors, I would like to address the grandfather clause first. The state is telling us that it's non-discriminatory regulation, but it certainly is very much discriminatory to say these schools are accredited, they can grant degrees, these other schools, newer religions, the Islamic schools, probably there aren't any grandfathered schools. They have to come and get accreditation, but the others are automatically accredited and allowed to grant degrees. What do they call those degrees, the grandfathered schools? Doctorates, Masters. In what? In whatever the topic is. Do you know any of the topics? Philosophy, Doctorate in Philosophy. University of Chicago is grandfathered, I'm sure. Well, no, but I'm trying to focus. Are there any grandfathered schools comparable to the schools you represent? Probably, yes. Wheaton and Moody may be grandfathered. Well, I don't know. The last thing I remember Wheaton was I wrestled against them in college. Okay, then they would be grandfathered, I guess. How old are you, Judge? I'm 74, so that's a long time ago. But I do have a senior in high school who will probably go to one of those religious schools that get degrees. But I really want to know if there is such a school, such a degree or whatever that you all would like to issue that a grandfathered school is allowed to issue. We looked. There were probably 15 or 20 schools. I can't remember the names off the top of my head that are granting degrees that are religious in nature. Would they be teaching the same things that your schools teach? Yes, there would be a significant amount of overlap. Well, overlap. But the problem with overlap is a lot of the so-called secular courses, as was mentioned over here, that biology and lots of others can have religious connotations. Yeah, I'd like to address that point because our schools are giving degrees in religious topics. They're not giving degrees in business administration. But church administration is going to be a topic if you're going to get a degree in ministerial studies. You may need to show that you can read a balance sheet. Well, in other words, you would incorporate a lot of accounting principles or whatever. Yeah, but these are subcategories within the religious degrees that we're granting. We're not asking to grant degrees in interior design or physics. But we may have courses in church design taught by someone who designs churches. But those are subsidiary degrees. So I don't think the problems that the state was alluding to about getting out of control are really applicable. And I would like to call the court's attention to the argument the state has made that it has benign motives. Certainly, the legislative process that was alluded to has many motives, such as keeping out competition. But the state's motive is, their benign motive, is we want to protect people. But the Supreme Court in the Reed case, and I'm reading from the Norton opinion of the Seventh Circuit, the majority in Reed found that insufficient. Quote, A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive. Is it your view that Reed basically erases the distinction between commercial speech and any other kind of speech? I think Reed does that, yes. Really? That's not this case. You think they might have given us a hint of that more explicitly? Well, I don't want to argue for commercial speech because that's not our case. I don't want to have to defend that. But certainly the content-based aspect of the law. So the state has made much of the fact, Mr. Mock, that you and your clients have elected not to try the certification process, the accreditation process with the state government. And ordinarily when we're looking at challenges to state regulations, we're looking for somewhat more concrete examples, applications, and so on. Could you address that challenge to your case? Yeah. When you have, first of all, the facial aspects of the law, in terms of the discrimination and the grandfather clause, don't require any exhaustion of remedy. The free speech laws and decisions allow standing to challenge those without having to go through an administrative process because the free speech clause says this threatens us right now. This law causes a harm to us by making our students unsure. Can I get a degree here? Our prospective students, parents, trying to attract faculty, saying we can't issue degrees or call ourselves accredited. At the same time, we don't want government involvement because we believe this is a matter of autonomy. Who can preach? Who can teach? Well, I can see why that would interfere with recruiting for students to go to college and pay a tuition and do whatever else if they can't come away with something beyond just learning a lot of good things about their faith. Yeah, and the state is saying these other schools are accredited. They're grandfathered in, but you're not. So there's a clear establishment clause issue there. How do your schools survive? By loyal donors who believe very much in the purpose of this school and their theology and their mission. The students who go there would have that same philosophy, I guess. Many do, but they lose students who go to different states where they can get degrees, or they lose students who may not have as full. I mean, there's a spectrum. They have loyal donors, and I'm sure there are donors who say, I don't want to give to this school because it's not Illinois accredited. I assume that, and I don't know what the 28 states do and don't do, but I assume there are plenty of states that allow colleges to do what your colleges do without interference. Is that correct? Yeah, 28 is the generalized statement from the state of Connecticut 2007 report. 27, 28 do not regulate, and 22 do. Thank you, Counsel. Thank you, Your Honor. Thanks to both counsel. The case is taken under advisement.